## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA
## OKLAHOMA CITY DIVISION

| | |
|---|---|
| **TYLENE WILCOX**, Individually and On Behalf of All Others Similarly Situated, | Civil Action No.: CIV-25-11-HE |
| Plaintiff, | |
| v. | **FLSA COLLECTIVE ACTION COMPLAINT PURSUANT TO 29 U.S.C. § 219(b)** |
| **COATES FIELD SERVICES, INC.** | |
| Defendant. | |

### PLAINTIFF'S ORIGINAL COMPLAINT

### SUMMARY

1.      Plaintiff Tylene Wilcox ("Wilcox" or "Plaintiff"), on behalf of herself and all others similarly situated, brings this lawsuit to recover unpaid overtime wages and other damages from Defendant Coates Field Services, Inc., ("Coates" or "Defendant") under the Fair Labor Standards Act ("FLSA"). *See* 29 U.S.C. § 201 *et seq.*

2.      Wilcox worked for the Defendant as a Senior Right-of-Way Agent from approximately June 1, 2023 until December 15, 2023.

3.      Wilcox and the Putative Collective Action Members (as defined below) regularly worked in excess of 40 hours per workweek.

4.      Wilcox, and the Putative Collective Action Members, never received overtime compensation for the hours worked in excess of 40 hours in a single workweek.

5.      Instead of receiving overtime as required by the FLSA, Defendant paid

1

Wilcox, and the Putative Collective Action Members, a flat rate for each day worked ("day rate") without overtime premium compensation for hours worked in excess of 40 hours in a workweek.

6.      Wilcox, and the Putative Collective Action Members, never received a guaranteed salary. *See Helix Energy Sols. Grp., Inc. v. Hewitt,* 142 S. Ct. 2674 (2022) (holding that a day rate alone cannot meet the salary basis test for FLSA exemptions).

7.      Because Wilcox and the Putative Collective Action Members were never paid a salary, the white-collar exemptions, including the administrative, the executive, and the highly compensated employee exemptions to the FLSA do not apply, regardless of the job duties performed by Wilcox and the Putative Collective Action Members.

8.      Defendant is therefore liable to Wilcox, and the Putative Collective Action Members, for the *per se* violation of the FLSA.

9.      This collective action seeks to recover the unpaid overtime wages, and other damages, owed to Wilcox and the Putative Collective Action Members.

## JURISDICTION & VENUE

10.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11.     This Court also has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

12.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this District.

13.     Defendant Coates Field Services, Inc. has its headquarters and principal

place of business at 3150 NW 149th St, Oklahoma City, OK 73134. According to the Oklahoma Secretary of State, the registered agent for service of process is John Joseph Coates, III who can be served at the aforementioned headquarters.

14. Defendant conducts substantial business operations in this District.

## **PARTIES**

15. Tylene Wilcox currently resides in Chambers County in Texas. Wilcox was employed by Defendant from approximately June 1, 2023, to December 15, 2023.

16. Wilcox worked as a Senior Right-of-Way Agent for Defendant.

17. Throughout her employment with the Defendant, Wilcox was paid a day rate with no overtime compensation despite working substantial overtime hours.

18. Coates purports to "provide the right of way services you need, when and where you need us. From survey permissions to title work, document management to GIS services, acquisition to construction support, and every step between – when it's time to choose, choose Coates."[1]

19. Wilcox's relationship with the Defendant was an employer/employee relationship.

20. Wilcox brings this action on behalf of herself and all other similarly situated employees as defined below.

21. Wilcox and the Putative Collective Action Members regularly worked more than 40 hours each week.

---

[1] https://www.coatesfs.com/ (last visited December 24, 2024).

22.     Defendant paid these employees a day rate, regardless of the hours worked, and failed to pay overtime premium compensation for hours worked in excess of 40 in a workweek, in clear violation of the FLSA.

23.     The similarly situated employees, or Putative Collective Action Members, sought to be certified are defined as follows:

> **All Coates employees who were paid a day rate with no overtime at any time during the past 3 years (the "Day Rate Workers").**

24.     The Putative Collective Action Members are easily ascertainable from the business and personnel records maintained by the Defendant.

## COVERAGE UNDER THE FLSA

25.     At all relevant times, Defendant has been an employer within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

26.     Plaintiff's work conditions, and those of the Putative Collective Action Members were governed by Coates Field Services, Inc. Coates Field Services, Inc. provided an employee handbook that Plaintiff and the Putative Collective Action Members were required to abide by and provided Standard Operating Procedures ("SOP's") that detailed the activities of Plaintiff and the Putative Collective Action Members.

27.     Defendant determined the rate and method of payment that would apply to Plaintiff and the Putative Collective Action Members.

28.     Coates Field Services, Inc. maintained Plaintiff's employment records and those of the Putative Collective Action Members.

29.     Plaintiff received pay from Coates Field Services, Inc. from approximately

June 2023 until December 2023.

30.    At all relevant times, Defendant has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

31.    At all relevant times, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA. 29 U.S.C. § 203(s)(1). The Defendant has, and had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on or with goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce.

32.    At all relevant times, Defendant's enterprise had an annual gross volume of sales made, or business done, of not less than $500,000.

33.    At all relevant times, Wilcox and the Putative Collective Action Members were engaged in commerce or in the production of goods for commerce.

34.    Defendant treated Wilcox and the Putative Collective Action Members as employees and uniformly dictated the pay practices which applied to them.

35.    Defendant's day rate pay scheme, depriving Wilcox, and the Putative Collective Action Members of overtime compensation for weeks in which they worked over 40 hours is, in and of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTUAL ALLEGATIONS

36.    Coates purports to "provide the right of way services you need, when and where you need us. From survey permissions to title work, document management to GIS services, acquisition to construction support, and every step between – when it's time to

5

choose, choose Coates."[2]

37.    To provide services, Defendant hires personnel (similar to Wilcox) to work on their behalf, including landmen, right-of-way agents, title agents, document specialists, project managers, supervisors, and other similar employees who provide land acquisition services, obtain easements from property owners, research land titles, and other related work for Defendant's customers.

38.    As a Senior Right-of-Way Agent, Wilcox's primary job duties included making phone calls and personal visits to land and mineral rights owners, preparing land leases and easements, submitting documents to her supervisors, reviewing titles and pipeline construction related matters, and attending regular meetings.

39.    During the relevant period, Wilcox worked for Defendant in excess of 40 hours during workweeks on numerous occasions.

40.    During the relevant period, Wilcox was paid a day rate for each day worked, regardless of the number of hours worked, and Defendants wrongly denied her the overtime premium compensation she deserved for hours worked in excess of 40 in any workweek.

41.    Without the job performed by Wilcox, Defendant would not have been able to complete business objectives.

42.    Wilcox was economically dependent on Defendant and relied on Defendant for work and compensation.

43.    Defendant dictated the amount and the type of compensation that Wilcox

---

[2] https://www.coatesfs.com/ (last visited December 24, 2024).

would receive.

44. Wilcox was never paid a salary.

45. Wilcox was never paid a minimum guaranteed amount for each workweek.

46. Wilcox never received overtime compensation for hours worked in excess of 40 hours in a workweek.

47. If Wilcox did not work in a week, she did not receive a guaranteed amount of at least $684 or even $455 as required by the FLSA at various relevant times.

48. Wilcox often worked more than 10-12 hours per day, for five (or more) days per week, for weeks at a time.

49. Defendants knew Wilcox regularly worked more than 40 hours in numerous workweeks.

50. During the time she was employed by Defendant, Wilcox did not work for herself, nor did she work for any other company or employer.

51. Defendant set Wilcox's weekly schedule and her compensation and what assignments she would be tasked to work on.

52. Wilcox had no control over the profits she may have earned or loss she may incur while working for Defendant.

53. The work Wilcox performed was an essential part of Defendant's core businesses.

54. Wilcox was required to follow and abide by company policies and procedures.

55. Defendant uniformly denied, refused, or failed to pay Wilcox overtime

compensation for the hours she worked in excess of 40 hours in a single workweek.

56.     Wilcox was not exempt from overtime.

57.     Defendant knew Wilcox was not exempt from the FLSA's overtime provisions or showed reckless disregard for whether Wilcox was exempt.

58.     Defendant knew the conduct described in this Complaint violated the FLSA or showed reckless disregard for whether the day rate pay scheme violated the FLSA.

59.     The overtime owed to Wilcox will be calculated using the Defendant's records or will be based on just reasonable inferences.

60.     Wilcox sustained damages arising out of Defendant's illegal and uniform employment policy.

61.     Defendant is liable under the FLSA for failing to pay overtime to Wilcox.

62.     Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Wilcox.

63.     Defendant was aware, or should have been aware, that the FLSA required them to pay Wilcox overtime compensation for all hours worked in excess of 40 hours per workweek.

## COLLECTIVE ACTION ALLEGATIONS

64.     Wilcox brings this claim as a collective action under the FLSA. Her consent to join the FLSA collective action is attached hereto as Exhibit 1.

65.     Based on her experiences with Defendants, Wilcox is aware that Defendant's illegal and unlawful practices and/or pay policies were imposed on the Putative Collective Action Members.

66. Wilcox's experiences are typical of the experiences of the Putative Collective Action Members.

67. Wilcox has no interest contrary to, or in conflict with, the Putative Collective Action Members that would prevent collective treatment.

68. The Putative Collective Action Members are similarly situated to Plaintiff Wilcox in all relevant respects.

69. The Putative Collective Action Members were victimized by Defendant's pattern, practice, and/or policy which was a willful violation of the FLSA.

70. To provide services, Defendant hired the Putative Collective Action Members to work on its behalf.

71. During the relevant period, the Putative Collective Action Members worked for Defendant in excess of 40 hours a week for weeks at a time.

72. During the relevant period, the Putative Collective Action Members were paid a day rate for each day worked, regardless of the hours worked, and Defendants wrongly denied them the overtime premium compensation they deserved for hours worked in excess of 40 hours in any workweek.

73. Throughout their employment with Defendant, the Putative Collective Action Members regularly worked more than 40 hours each week without receiving overtime compensation.

74. Without the job performed by the Putative Collective Action Members, Defendant would not have been able to complete business objectives.

75. The Putative Collective Action Members were economically dependent on

Defendant and relied on Defendant for work and compensation.

76.    Defendant dictated the amount and the type of compensation that the Putative Collective Action Members would receive.

77.    The Putative Collective Action Members were never paid a salary.

78.    The Putative Collective Action Members never received overtime compensation for hours worked in excess of 40 in a workweek.

79.    If the Putative Collective Action Members did not work in a week, they did not receive a guaranteed weekly amount of at least $684 or $455 as required by the FLSA during relevant times.

80.    Putative Collective Action Members often worked more than 12 hours per day, for five (or more) days per week, for weeks at a time.

81.    Defendant knew the Putative Collective Action Members regularly worked in excess of 40 hours in a workweek.

82.    Defendant hired the Putative Collective Action Members with the intention that they would continue to work for Defendant indefinitely.

83.    During the time they were employed by Defendant, the Putative Collective Action Members were not in business for themselves, nor did they provide work for any other company or employer.

84.    Defendant set the Putative Collective Action Members' schedules and compensation and decided what work they would perform.

85.    The Putative Collective Action Members had no control over profits they might earn or losses they might incur while working for Defendant.

10

86.     The Putative Collective Action Members were required to follow and abide by Defendant's company policies and procedures.

87.     The work the Putative Collective Action Members performed was an essential part of Defendant's core businesses.

88.     Defendant uniformly denied, refused, or failed to pay the Putative Collective Action Members overtime compensation for the hours they worked in excess of 40 hours in a single workweek.

89.     The Putative Collective Action Members were not exempt from overtime.

90.     Defendant knew, or showed reckless disregard for whether, the Putative Collective Action Members were not exempt from the FLSA's overtime provisions.

91.     Defendant knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

92.     The overtime owed to the Putative Collective Action Members will be calculated using the Defendant's records and the same formulae that applies to Wilcox.

93.     The Putative Collective Action Members sustained damages arising out of Defendant's illegal and uniform employment policy.

94.     Defendant is liable under the FLSA for failing to pay overtime to the Putative Collective Action Members.

95.     As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to the Putative Collective Action Members.

96.     Defendant was aware, or should have been aware, that the FLSA required

them to pay the Putative Collective Action Members for all hours worked in excess of 40 hours per workweek.

97.    A collective action is superior to other available means for fair, efficient, and consistent adjudication of the lawsuit.

98.    Absent a collective action, many of the Putative Collective Action Members would not obtain redress for their injuries, and Defendant would reap the unjust benefits of violating the FLSA.

99.    Further, even if some of the Putative Collective Action Members could afford individual litigation against Defendant, it would be unduly burdensome to the judicial system.

100.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Collective Action Members, as well as provide judicial consistency.

101.    There are no difficulties that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

102.    Even if the issue of damages were somewhat individualized in character, the damages can be calculated by reference to Defendant's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

103.    There are many similarly situated Putative Collective Action Members who have been denied, refused, or not paid overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity

to join it.

104.   The wage violation at issue in this case (day rate payment with no overtime pay) is not dependent on the job title or job duties because a day rate is not a salary, and no white-collar exemption would apply regardless of the job title or duties.

105.   The notice should be sent to the Putative Collective Action Members pursuant to 29 U.S.C. § 216(b).

106.   Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

## CAUSE OF ACTION
## VIOLATION OF THE FLSA

107.   Wilcox realleges and incorporates by reference all allegations in preceding paragraphs.

108.   Wilcox brings her FLSA claim as a collective action under 29 U.S.C. § 216(b).

109.   Defendants violated, and continue violating, the FLSA by failing to pay Wilcox and the Putative Collective Action Members overtime compensation.

110.   Wilcox and the Putative Collective Action Members were Defendant's employees for purposes of the FLSA overtime requirements.

111.   Defendant were Wilcox's, and the Putative Collective Action Members', employers under the FLSA.  Defendant suffered or permitted Wilcox and the Putative Collective Action Members to work for, or on, Defendant's behalf during the relevant period.

112. Defendant cannot meet the burden to demonstrate that Wilcox or the Putative Collective Action Members are exempt from overtime under the administrative exemption.

113. Defendant cannot meet the burden to demonstrate that Wilcox or the Putative Collective Action Members are exempt from overtime under the executive exemption.

114. Defendant cannot meet the burden of demonstrating that Wilcox or the Putative Collective Action Members are exempt from overtime under the professional exemption.

115. Defendant cannot meet the burden to demonstrate that Wilcox or the Putative Collective Action Members are exempt from overtime under the highly compensated employee exemption.

116. Defendant failed to pay Wilcox and the Putative Collective Action Members overtime as required by the FLSA.

117. Defendant knowingly, willfully, or in reckless disregard, carried out this illegal pattern or practice of failing to pay Wilcox and the Putative Collective Action Members overtime compensation.

118. Defendant's failure to pay overtime compensation to Wilcox and the Putative Collective Action Members was neither reasonable, nor was the decision not to pay overtime made in good faith.

119. Accordingly, Wilcox and the Putative Collective Action Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their hourly rate of pay, plus liquidated damages, and attorney's fees and costs.

14

## **PRAYER**

**WHEREFORE**, Plaintiff Tylene Wilcox, individually and on behalf of the Putative Collective Action Members, demands judgment against Defendant and respectfully requests that this Honorable Court grant the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Collective Action Members to permit them to join this action by filing a written notice of consent;

b. A judgment against Defendant awarding Wilcox and the Putative Collective Action Members the unpaid overtime compensation owed to them and an additional, equal amount, as liquidated damages;

c. Declaratory judgement that the practices complained of in this Complaint are unlawful under the FLSA;

d. An Order awarding attorneys' fees, costs, and expenses;

e. Pre- and post-judgment interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate under applicable law and in the Court's discretion.

Respectfully submitted,

By:   */s/ Gabriel A. Assaad*

Gabriel A. Assaad
Texas Bar No. 24076189
gassaad@mcdonaldworley.com
Matthew S. Yezierski
Texas Bar No. 24076989
matt@mcdonaldworley.com
**McDONALD WORLEY, P.C.**
1770 St. James Place, Suite 100
Houston, TX 77056
(713) 523-5500 - telephone
(346) 335-4293 - facsimile

Galvin Kennedy
Federal Bar No. 20791
Texas State Bar No. 00796870
Galvin@KennedyAttorney.com
**KENNEDY LAW FIRM, LLP**
2925 Richmond Ave., Ste. 1200
Houston, TX 77098
(713) 425-6445 - telephone
(888) 389-9317 - facsimile

**ATTORNEYS FOR PLAINTIFF**